UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:19-cr-217-SEB-TAB |
| | ) | |
| JORDAN BOYD, | ) | |
| | ) | |
| Defendant | ) | |

## MOTION FOR REVIEW OF RELEASE ORDER

The United States of America, by counsel, Josh J. Minkler, United States Attorney for the

Southern District of Indiana, and Abhishek S. Kambli, Assistant United States Attorney,

respectfully moves this Honorable Court, pursuant to 18 U.S.C. § 3145(a), for review, and

revocation, of a release order issued by United States Magistrate Judge Tim A. Baker permitting

the pretrial release of Jordan Boyd.    In support of its motion, the United States would show the

Court the following:

1.      The defendant is charged in an indictment returned by the Grand Jury on June 18, 2019,

with violation of Title 18, United States Code, Section 922(g)(3) and 922(g)(8) for unlawful

possession of a firearm by a drug user and person subject to a domestic violence protective order.

2.      The defendant first appeared before Magistrate Judge Baker on June 19, 2019.   The

United States moved for pretrial detention pending trial pursuant to 18 U.S.C. § 3142, on the

basis that the defendant is charged with an offense involving the possession of a firearm within

the meaning of Title 18, United States Code, Section 3142(f)(1)(E), and because the defendant

poses a serious risk of flight and danger to the community.   *See* 18 U.S.C. § 3142(f)(2).   A

detention hearing was held on June 24, 2019, before the Magistrate Judge Baker. At the request

of defense counsel the detention hearing was continued until June 27, 2019.   At the conclusion

of the hearing, Magistrate Judge Baker indicated that he was going to release the defendant

subject to certain conditions after pretrial services conducted an inspection of the home.   That

inspection was completed, as noted in an Addendum to the Pretrial Services Report (dated June

28, 2019), and Magistrate Judge Baker ordered the defendant released on July 1, 2019.

3.      The United States respectfully requests that this Court review and revoke the release

order.   The United States would proffer to the Court the following factors, among others, in

support of this motion:

        a.      On June 9, 2019, the defendant called police after a domestic dispute with his

girlfriend where he accused her of stealing his vehicle.   When law enforcement arrived, the

defendant indicated he was moving away from his girlfriend's residence and asked for their

assistance in gathering his belongings.

        b.      As law enforcement was assisting the defendant, they found three firearms in the

bedroom and the defendant stated they belonged to him.   Dispatch notified law enforcement

that the defendant was subject to five different protective orders including one involving an ex-

girlfriend who he has a child in common with.

        c.      The defendant was read his Miranda rights and interviewed by law enforcement.

He admitted to possessing the firearms and also admitted to being a daily user of marijuana.

When asked how much marijuana he smokes every day, he stated "you don't want to know, like

a pound."   During the interview the defendant demonstrated knowledge of the protective order

and expressed potential plans to move to California.

d.      A search warrant was ultimately executed of the defendant's vehicles and his residence.   The search yielded 30 grams of marijuana, two working digital scales with marijuana residue on the balances, $1,455 in cash, ammunition and the three firearms.   The firearms are capable of accepting high capacity magazines and one of the firearms was reported stolen out of Florida.

e.      The defendant and his brother, Alton Boyd Jr., have both been on law enforcement's radar for a significant amount of time.   They are part of a group that law enforcement refers to as the Bertrams and the Boyds who are in conflict with the "Ruthless crew."   The exact origins of the conflict are not 100% clear but based on evidence available to law enforcement it involves drug dealing conflict.

f.      On April 10, 2019, Alton Boyd Jr. was arrested and ultimately charged for being a drug user in possession of a firearm in violation of in violation of Title 18, United States Code, Section 922(g)(3).   The firearm that Alton Boyd Jr. possessed was loaded with 25 rounds of ammunition.   Alton Boyd Jr. was indicted on this charge on June 18, 2019.

g.      In his interview with law enforcement on April 10, 2019, the Alton Boyd Jr, stated that members of the "Ruthless crew" burglarized the home of the defendant in October 2018.   Among the items they stole were 19 firearms that were estimated to cost $10,000.   Both the defendant and his brother have been unemployed for years and it is unlikely that they would have the financial resources for those firearms through legitimate means.

h.      A couple weeks after this incident, Dujuan Love, a member of the "Ruthless crew" was found shot and killed.   Alton Boyd Jr. stated in his interview that members of the "Ruthless crew" believed he and his brother were responsible for that murder but denied it.

3

Law enforcement has at this point has not been able to solve that murder but both the defendant and his brother are among those under investigation for it.

i.      Around March 2019, the defendant was attacked by members of the "Ruthless crew" and was shot in the arm.   A week later 30 rounds of ammunition were fired into a home linked to the "Ruthless crew."   The defendant and his brother are under investigation for this incident.

j.      In April 2019, the Alton Boyd Jr. was attacked by members of the "Ruthless crew" who fired 40-50 rounds of ammunition at him.   He was not injured as a result of this attack.   The next day, numerous rounds of ammunition were fired into the home of a member of the "Ruthless crew" who is a suspect in the defendant's shooting.   In addition, a week later, 30 rounds of ammunition were fired into the home of an individual linked to the "Ruthless crew." The defendant and his brother are under investigation for those incidents.

k.      Alton Boyd Jr. denied that he and the defendant had anything to do with the shootings targeted at the "Ruthless crew" but did report that the attacks they have made against him and the defendant.

l.      Overall, law enforcement estimates that there have been a total of 21 shootings linked to the conflict between the defendant's group and the "Ruthless crew."   The results have been one murder and three aggravated assaults.

m.      The defendant was an individual subject to a domestic violence protective order. The order states that "pursuant to 18 U.S.C. 922g, once a respondent has received notice of this order and an opportunity to be heard, it is a federal violation to purchase, receive or possess a firearm while subject to this order if the protected person is…A person with whom the

4

respondent has a child." The defendant and the protected person have a child together. The protective order was effective on December 19, 2017 and expires December 18, 2019. In addition the defendant was subject multiple other protective orders which prohibit him from possessing a firearm at the state level at the time of the offense.

n.      On December 13, 2017, prior to being subject to the protective order the defendant broke the glass in the entry door to the protected person's home after her mother denied him entry. On February 14, 2019, the defendant while under the protective order tried to make contact with the protected person by knocking on her door.

o.      On June 21, 2019, pretrial services released the PS3 for the defendant. In that report, the defendant scored a category 4 on a pretrial risk assessment indicating relatively high risk of flight and/or danger to the community. The PS3 concluded that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required or the safety of the community. As a result, pretrial services recommended detention. Pretrial services came to this conclusion without consideration of the conflict between the defendant and the "Ruthless crew."

p.      Although he does not have a felony yet, the defendant has a significant criminal history that began in 2015 when he was 17 years old. His juvenile criminal history includes leaving the scene of an accident and theft. As an adult he has a misdemeanor for driving while on a suspended license. In addition, he currently has charges currently pending for maintaining a common nuisance, dealing in marijuana between 30 grams and 10 pounds, possession of a narcotic drug, and possession of marijuana. Three of those charges are felonies. The defendant has 12 failures to appear in court throughout his criminal history

q.      The defendant has not had any verified employment history as an adult. He is currently unemployed.

r.      The defendant admitted to using marijuana daily since the age of 16.   In addition, he told law enforcement that he smokes a high amount of marijuana every day.   The defendant also appears to have been driving on a suspended license.

s.      The defendant is a lifelong resident of the district and has family ties to the district.   However, he also indicated in his interview with law enforcement that he has ties to other states including California.   Pretrial services conducted a home visit of the defendant's father's residence and concluded it was a suitable location for pretrial release.   However, in the addendum to the PS3, pretrial services still recommended that the defendant be detained until his trial.

t.      The defendant presented letters during the detention hearings from the protected person and her mother indicating that they do not believe he is a threat.

u.      Based on the marijuana and digital scales found in the defendant's home combined with the amount of cash found in his possession along with the fact that the defendant owned 22 guns and multiple vehicles without any verified employment, there is clear evidence that the defendant is engaged in drug dealing.

4.      The Government has more than met its burden of clear and convincing evidence that the defendant is a danger to the community and by a preponderance of the evidence that he is a flight risk.   In regards to the flight risk, the defendant has shown an unwillingness to follow court orders by failing to appear in court on 12 different occasions.   The best evidence of whether or not the defendant will appear as required is what he's done in past court appearances.   In that

regard, he has a poor track record by having 12 failures to appear. This concern for whether or not the defendant will appear as required is further exacerbated by the fact that he is a daily user of marijuana along with his stated desire and possible plan to move to California.

5. The biggest concern the Government has in the defendant's case is the danger he poses to the community. The Government laid out in detail the investigations that the defendant is under for various shootings. Magistrate Judge Baker stated that there is "no evidence" that the defendant was involved in these shootings. These shootings are extremely difficult cases for law enforcement to solve given that the victims are themselves criminals and unwilling to cooperate with law enforcement. Therefore, unless there is a direct eyewitness who is willing to report to law enforcement, these crimes oftentimes go unsolved. As a result, a lot of the evidence against the defendant in those investigations is circumstantial. However, the timing of the shootings in relation to when the defendant and his brother were attacked along with the Alton Boyd Jr.'s statements that members of the "Ruthless crew" believe that he and his brother are involved in attacks against them cannot be ignored. It would be highly unlikely that the defendant has no involvement at all with the attacks against the "Ruthless crew" that happen almost immediately after either he or his brother are attacked by that group. As a result these incidents should be taken seriously by the Court and be given consideration in the determination of whether or not to detain the defendant until trial.

6. Even if the defendant is taken at his word and has nothing to do with the shootings against the "Ruthless crew," he still poses a serious risk of danger to the community. The defendant possessed three firearms that are capable of accepting high capacity magazines and one of them was stolen. He does this while using marijuana on a daily basis. The evidence

7

indicates that these aren't the first firearms that he possessed.   According to his brother, he possessed 19 firearms in October 2018 that were stolen from his home.   What is particularly noteworthy is that he owned these firearms after he was subject to the protective order and while he would have still been a daily user of marijuana.   He cannot claim ignorance of what the protective order prohibits since it specifically states that it is a violation of 18 U.S.C. 922g for him to purchase, receive, or possess a firearm.   It appears that since he has been subject to the protective order that the defendant has possessed a total of 22 firearms.   There is no legitimate reason why the defendant who is prohibited from possessing firearms for two different reasons should have 22 firearms in his possession.   In addition, the defendant failed to abide by the terms of the protective order by trying to make contact with the protected person four months ago.   Even though the protected person indicates that she does not believe he is a threat, the defendant's behavior shows a complete disregard for court orders.   Finally, the defendant is charged with distribution of marijuana in Marion County and there is ample evidence to corroborate that charge based on the drugs, digital scales, and cash found in the defendant's home.   When you combine all those factors it is clear that the defendant poses a serious risk of danger to the community.

7.     The Government further notes that the residence found by the pretrial services officer to be a suitable location for pretrial release is the same home at which the defendant had lived for only two weeks and from which the defendant was trying to move away on the day he was arrested.   Moreover, the defendant had been living there at the time he committed the charged offense, and during the two-week period in which he had been living there, he had already brought three firearms, ammunition, marijuana, and two digital scales into that residence.

These factors alone undermine the notion that the defendant can or should be living at this same residence during any period of pretrial release, and only reinforce the conclusion that the defendant poses a serious risk of danger to the community and a high likelihood of failure to follow the terms of any pretrial release issued by the Court.

8.       During the detention hearing there appeared to an issue from the Court's perspective over whether all the elements of Count Two of the indictment were met.    In particular, the Court questioned whether there was probable cause. In this regard, the Court appeared to miss aspects of what was in the protective order.    The protective order specifically states that it is a violation of 18 U.S.C. 922g for the defendant to possess a firearm while this order was in effect if it involved the protected person had a child with the defendant, which was the case.    The defendant had knowledge of his prohibited status through the protection order being served and his own admissions both in the PS3 as well as in an interview with law enforcement.    The defendant confessed to possessing the firearms and the firearms had traveled through interstate commerce.    In addition, the defendant was subject to protective orders which prohibited possession of weapons at the state level prior to the offense.    Therefore the idea that he was of an innocent mind as to his prohibited status at the time of the offense is one that is not based on evidence.

9.       The only factor the defendant has in his favor is that he has ties to the community and has lived here his whole life.    However, that is also countered by the fact that he has been unemployed for a long time and also has ties with known criminals in the district to include his brother.    Given that all the factors that are in his favor were already present when he committed the offense he is charged, they should be given no serious weight since they do not provide this

9

court with any assurance that the defendant will appear as required or that the community will be safe if he is released.    In addition, he expressed a desire and possible plan to move to California. Therefore, his ties to the community are of little value in his case.

10.      The Government respectfully submits that, under the factors contained in 18 U.S.C. § 3142(g), the Government has more than sufficiently shown that no condition or combination of conditions will reasonably assure the appearance of the defendant as required or the safety of any other person and the community.

11.      This Court has original jurisdiction over this matter, including the United States's request for revocation of the release order entered in the Southern District of Indiana, pursuant to 18 U.S.C. § 3145(a)(1).

WHEREFORE, the United States of America respectfully requests that this Court review and revoke the release order entered by the U.S. Magistrate Judge in this cause and for all other just and proper relief.

Respectfully submitted,

JOSH J. MINLER
United States Attorney

By:      s/    Abhishek S. Kambli
Abhishek S. Kambli
Assistant United States Attorney

10

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2019, a copy of the foregoing pleading was filed electronically.

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing

system. Parties may access this filing through the Court's system.

By:     s/   Abhishek S. Kambli
        Abhishek S. Kambli
        Assistant United States Attorney
        Office of the United States Attorney
        10 W. Market St., Suite 2100
        Indianapolis, Indiana 46204-3048
        Telephone: (317) 226-6333
        Fax: (317) 226-6125
        E-mail:abhishek.kambli@usdoj.gov